J-S21016-26

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| MARK ALLEN GARNAND | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| ARIEL GRACE GARNAND | : | |
| | : | |
| Appellant | : | No. 185 MDA 2026 |

Appeal from the Order Entered January 2, 2026
In the Court of Common Pleas of Adams County Civil Division at No(s):
2023-SU-0759

BEFORE: BOWES, J., OLSON, J., and KUNSELMAN, J.

MEMORANDUM BY OLSON, J.: **FILED: JULY 29, 2026**

Appellant, Ariel Grace Garnand, ("Mother") appeals from the January 2, 2026 final custody order entered in the Court of Common Pleas of Adams County that granted Mother and Mark Allen Garnand ("Father") shared legal and shared equal physical custody of the parties' biological child, T.B.G., a male child born June 2018 ("the Child"). After careful review, we affirm.

The trial court summarized the factual and procedural history as follows:

The parties are the [biological] parents of [the Child]. The parties separated in January 2020[,] and had been operating on an informal custody schedule which revolved around Father's work schedule as a firefighter for Anne Arundel County, Maryland. This informal schedule attempted equal physical custody on either a [two] days on/[two] days off or 3/4/4/3 schedule. During the 2022-[2023] school year, the Child attended pre-kindergarten in Maugansville, Maryland where [Mother] resided. Custody exchanges were occurring at [a convenience store] in Thurmont, Maryland which required each parent to drive approximately 20 minutes.

After two months advance notice, on June 26, 2023, Father relocated from Greencastle, Cumberland County, Pennsylvania to

the Fairfield School District in Fairfield, Adams County, Pennsylvania, where he purchased a home. Father was residing with his partner and her 3½ year old child. He would drive that child to daycare in Maugansville. Father has two other children who were attending cyber charter school. He has equal shared physical custody of those children. The Fairfield Elementary School day operates from 8:55 a.m. until 3:25 p.m. Father resides within minutes of that school. Father's partner was deemed a positive influence in the Child's life.

On August 4, 2023[,] Mother moved from Maugansville to Frederick, Maryland where she rented a residence closer to her family support system. After this move[,] the parties' residences were 33 miles (approximately 43 minutes) apart. This move placed the Child in the Frederick County School District and [resulted] in him attending Tuscarora Elementary School. That school's operating schedule was from 9:00 a.m. to 3:30 p.m. Travel time between Father's residence and Tuscarora Elementary [School] was 40-60 minutes, depending upon traffic. Mother's residence was [nine] minutes from the school.

The Child's paternal grandmother was residing in Greencastle. She had aided in transporting the Child. Her home was 43 miles or 50 minutes from Tuscarora Elementary [School] and 29 miles or 50 minutes from Fairfield Elementary [School]. Paternal grandfather's home was 25-30 minutes from either school.

Father's employment as a firefighter required him to work from 6:30 a.m. until 7:00 a.m. the following day and then be off for the next 72 hours. Mother was working as [a] district loss manager for [a national department store chain] and did most of her work from home. Her parents were also available to assist her with childcare and transportation.

[Father filed an emergency petition for custody on August 4, 2023, and the trial court conducted a hearing on the matter on August 18, 2023.] By [trial court] order dated August 31, 2023, [the trial court] directed, in relevant part, for the parties to have equal shared custody of the Child on a two day on/two day off rotation in accordance with Father's work schedule. The Child was to attend Tuscarora Elementary School. Mother, or her designee, was to aid in transportation, if necessary, if the Child was to attend school on Father's custody day. Custody exchanges were to continue at the [convenience store] in Thurmont. A holiday and vacation schedule was designated.

On June 6, 2025, Mother filed [a] petition seeking a change in the custody schedule for numerous reasons set forth therein, including her anticipated move to Thurmont, Maryland. [The trial court] met with the parties on July 9, 2025, at which time Mother proposed a [5/2/2/5] custody schedule. No agreement was reached. The parties were directed to follow the existing schedule and the matter was set for conciliation.

On August 28, 2025, the parties met with a conciliator. Several proposals were suggested for resolution but no comprehensive agreement was reached. The parties did agree that the Child needed to attend counseling for his [attention-deficit/hyperactivity disorder ("ADHD")]. They also agreed to a Thanksgiving [holiday] schedule. The conciliator issued a report dated September 7, 2025.

On September 15, 2025 the [trial court scheduled a] pre-trial conference [] for October 1, 2025. At Father's request that conference was continued.

The pre-trial conference was held on October 14, 2025. [At the pre-trial conference, the parties represented that they were] seeking equal custody time with the Child and each [party] proposed a schedule which was rejected by the other [party]. The parties were unable to agree upon where the Child should attend school. However, because [the Child] was already enrolled in Thurmont Elementary [School,] it was agreed that if a change was to be implemented it would not take place until the 2026-[2027] school [year]. The [trial court held a hearing on the custody matter] on December 15, 2025.

Trial Court Opinion, 1/2/26, at 1-3 (extraneous capitalization omitted; formatting modified). At the conclusion of the hearing, the trial court made the following findings of fact:

1. After entry of the August 31, 2023 custody order[,] Mother continued living in Frederick, Maryland and the Child continued attending Tuscarora Elementary School for kindergarten and first grade.

2. Father continued residing [in] Fairfield, Adams County, Pennsylvania with his partner[] and her child[.]

- 3 -

3.    In April 2025, Mother was laid off from her job with [the national department store chain] and began receiving unemployment compensation. As a result she was unable to afford her rent.

4.    Mother located a residence in Thurmont, Maryland in order to be closer to Father. Her parents agreed to purchase the property as either a place for Mother to reside or as an investment if she was unable to live there.

5.    On June 18, 2025, Father and [his partner ("step-mother")] were married.

6.    At the end of July 2025, Mother moved to her current residence [in] Thurmont, Frederick County, Maryland.

7.    The parents' homes are 14 miles and approximately 22 minutes apart with Father's residence being generally northwest of Mother's residence.

8.    The Child was enrolled in Thurmont Elementary School in second grade for the 2025-[2026] school year. That school's day runs from 8:40 a.m. until 3:10 p.m.

9.    Mother's home is approximately a [five] minute drive from the Child's school and Father's home is 14 miles and approximately 20 minutes from the school.

11.   [Father] has two older children [with another individual and] shares physical custody [of the older children]. Those children participate in the cyber-school through Commonwealth Charter Academy.

12.   Father is still employed as a firefighter but is no longer on active duty because of a work-related injury. In the near future he expects to be considered medically retired.

13.   Step-mother currently is employed as a dental hygienist in the Frederick, Maryland area. [Step-mother's place of employment is located] generally south of both residences. Step-mother works Monday, Tuesday, Wednesday[,] and alternating Fridays. She leaves [her residence] around 6:30 a.m. and sees her last patient around 4:00 p.m. She normally arrives home between 6:00[ p.m. and] 7:00 p.m.

14.   Mother is currently employed by the Adams County Probation Department in Gettysburg, Adams County,

Pennsylvania. [The location of Mother's employment] is generally north of her residence and the Child's school and northeast of Father's residence. She works from 8:00 a.m. until 4:00 p.m. Monday through Friday. Her [place of employment] is 24 miles and approximately 30 minutes from her [residence] and 25 miles and approximately 28 minutes from Thurmont Elementary [School].

15. On school days at Thurmont Elementary[,] the Child can attend before[-]school [childcare] at the elementary school beginning anytime after 7:00 a.m. and can attend after[-]school [childcare] until Mother picks him up around 4:30 p.m. Mother reports that the Child enjoys being involved in this program. Mother pays for the Child to participate in this program. So long as the Child is enrolled in [Thurmont Elementary School,] the Child can participate in a [childcare] program at the school during the summer [months when school is not in session].

16. The Child is currently involved in Boy Scouts [of America], soccer[,] and lacrosse in the Thurmont area. Boy Scout meetings are scheduled for the first and third Tuesday and the third Monday of the month. Soccer takes place in the fall and normally involves two practices per week and a game on Saturday. Lacrosse takes place in the spring and normally involves two practices per week and a game on Saturday.

17. In early 2024, the Child was diagnosed with ADHD. Mother attended meetings at Tuscarora Elementary [School] where accommodations were arranged to meet the Child's needs. Mother asked Father to agree for the Child to attend counseling but was not able to get a response until the recent conciliation conference. Since that time[,] the parties have not been able to agree upon a counselor for the Child. Father suggested counselors in the Greencastle and Chambersburg areas while Mother suggested [counselors] in the Gettysburg and Frederick areas. Likewise, the parties have not been able to agree whether the Child should be placed on medication for this diagnosis. Father wants to pursue medication while Mother wants to pursue counseling before medication is prescribed. Insurance is not an impediment to where counseling takes place.

18.  The Child is doing well in his current school and has made a number of friends.

19.  The Child's medical appointments are normally scheduled by Mother. The Child's dental appointments are normally scheduled by step-mother.

20.  Both parties report some communication difficulties when they discuss issues surrounding the Child and each believes he [or] she is more civil than the other parent. Exhibits offered by the parties confirm this concern to some degree. However, not all communication seems to be acrimonious.

21.  Mother's parents reside in West Friendship, Maryland[,] about a 40[-]minute drive generally south from Mother's residence.

22.  [Father's step-child] currently attends kindergarten at Fairfield Elementary School. Father's home is [three] miles and approximately [eight] minutes from that school. That school's day runs from 9:00 a.m. [to] 3:25 p.m.

23.  Father's oldest [biological] children[] reside equally with their mother somewhere between Chambersburg and Shippensburg[, Pennsylvania]. Father has physical custody of those children from Wednesday at 5:00 p.m. until either Saturday night or Sunday morning (alternating). He meets those children on Wednesday at a [convenience store] in Greencastle. Step-mother then arrives at that location and takes those two children back to the Shippensburg area for their youth group activities[,] after which she drives them back to Fairfield. Meanwhile, Father drives [his step-child] to Greencastle and, after the custody exchange, returns to his residence with her.

24.  Step-mother is currently about [four] months pregnant.

25.  Father wants the Child to attend the Fairfield School District. The school is 15 miles and approximately 24 minutes generally northwest from Mother's home. Her place of employment is 11 miles and approximately 19 minutes northeast from that school.

*Id.* at 4-5 (extraneous capitalization omitted). On January 2, 2026, the trial court granted Mother and Father shared legal custody and shared equal

physical custody of the Child.  Trial Court Final Custody Order, 1/2/26, at §§ I

and II.  The trial court set forth the parameters of the "shared equal physical

custody" schedule as follows:

**A.  School Year (Rotating Two Week Schedule):**

1.  Mother shall have custody from 9:00 a.m. on Saturday until the beginning of school on Thursday unless Father provides notice to Mother by 7:00 p.m. on Tuesday that he will be able to arrange for [the Child] to be picked up after school on Wednesday, in which case he will commence physical custody at that time;

2.  Father shall then have physical custody until [the Child] begins school the following Monday at which time custody shall transfer to Mother.  If school is closed on Monday and Mother is also off work that day[,] she shall commence custody at 7:00 p.m. on Sunday.  If school is closed on Monday and Mother is not off work that day[,] Father shall retain custody until 4:30 p.m. [on Monday];

3.  Mother shall then retain custody until [the Child] is taken to school on Wednesday at which time custody shall be transferred to Father; and

4.  Father shall then retain custody until 9:00 a.m. on Saturday when custody shall be transferred to Mother.

**B. Summer School Vacation Period:** The parties shall have custody on alternating weeks with Mother having the first week commencing at 5:00 p.m. on the first Friday after the close of the school year and Father having the following week commencing at 5:00 p.m. on Friday.  This schedule shall continue until 9:00 a.m., on the last Saturday before the beginning of the school year when the parties shall revert to the school year schedule commencing with [Section II(A)(1), *supra*].

**C. Vacation:** Unless otherwise agreed by the parties in writing, a parent may only take [the Child] on a vacation during weeks designated for that parent in [Section II(B), *supra*].  If the vacation involves at least one overnight away from the parent's

residence, the parent taking the child on the vacation shall provide to the other parent at least seven [] days written notice of the destination, the address of the accommodations, and a telephone number where the vacationing parent can be reached. No vacation shall be permitted outside of the continental United States without written agreement of both parties.

**D. Holidays and Special Days:** The following special occasions shall have priority over all other custody provisions of this [final custody order].

1. **General Holidays:** The parents shall alternate New Year's Eve, Easter Sunday, Memorial Day, Independence Day, and Labor Day from 9:00 a.m. the day of the holiday until 9:00 a.m. the following day (or prior to the start of school if school is in session). In 2026, Father shall have [physical custody of the Child on] New Year's Eve.

2. **Thanksgiving:** In 2026[,] and all even-numbered years, Father shall have custody of [the Child] from 11:00 a.m. Thanksgiving Day until 8:00 a.m. the following day. In the odd-numbered years Mother shall have custody [of the Child] during this time.

3. **Christmas:** In 2026[,] and all even-numbered years, Father shall have custody of [the Child] from 7:00 a.m. on December 23rd until 7:00 p.m. on December 24th and Mother shall have custody from 7:00 p.m. on December 24th until 7:00 p.m. on December 25th. In the odd-numbered years this schedule shall reverse.

4. **Parent's Day[:]** Mother shall have custody of [the Child] on Mother's Day and Father shall have custody on Father's Day. Custody shall begin at 7:00 p.m. the day before the holiday and end at 7:00 p.m. on the holiday.

*Id.* at § II(A-D).

On January 30, 2026, Mother filed a motion seeking reconsideration of the final custody order. That same day, January 30, 2026, Mother also filed

a notice of appeal challenging the final custody order, as well as a concise statement of errors complained of on appeal pursuant to Pennsylvania Rule of Appellate Procedure 1925(a)(2)(i).[1]   The trial court filed its Rule 1925(a) opinion on February 24, 2026.

Mother raises the following issues for our review:

1.    Did the trial court commit an error of law and abuse discretion [in] Section II[-]Physical Custody [of] the [January 2, 2026 final custody order,] by ordering that the parties shall have shared equal physical custody of [the Child] beginning January 17, 2026[,] because the [trial] court also granted Father the option to exercise an additional [21] overnights of physical custody on alternating Wednesday nights during the school year in Week 1 of the schedule for physical custody, which results in actually awarding Father the option to exercise primary physical custody of [the Child] in that Father was given the right to exercise physical custody on 199 overnights each year, which amount[s] to 54.52% [physical] custody on an annual basis, and effectively granted him the right to have primary physical custody?

2.    Did the trial court commit an error of law and abuse of discretion in Section II[-]Physical Custody [of] the [January 2, 2026 final custody order,] in that the order states that the parties have shared equal physical custody when the [trial] court effectively awarded Father the option to exercise primary physical custody on an annual basis which,

_____

[1] The trial court did not take action on Mother's motion for reconsideration within the 30-day period following the entry of the final custody order.  The trial court's lack of action in disposing of Mother's motion, however, does not affect our jurisdiction over this custody matter.  *Interest of C.B.*, 264 A.3d 761, 769 n.16 (Pa. Super. 2021) (stating, the "filing of a motion for reconsideration does not toll [the] thirty-day appeal period, unless [the] trial court enters [an] order expressly granting reconsideration within thirty days of [the] entry of [an] appealable order"), *appeal denied*, 270 A.3d 1098 (Pa. 2022).

if elected by Father, would result in Mother only having physical custody on 166 overnights each year or 45.47% physical custody which effectively constitutes partial physical custody of [the Child]?

3.    Did the trial court commit an error of law and an abuse of discretion in that by including the option given to Father for him to be able to exercise an additional 21 overnights of physical custody during the school year on alternating Wednesday overnights in Section II[-]Physical Custody, the schedule of physical custody of [the Child] is in direct contravention of the request of the parties stated on the record during the custody hearing on December 15, 2025, wherein [] both [parents stated] that they were requesting to receive a shared equal schedule for physical custody of [the Child]?

4.    Did the trial court commit a mistake of fact in Section II[-]Physical Custody [of] the [January 2, 2026 final custody order,] by stating that the parties were granted shared equal physical custody [but then] by including the option for Father to exercise an additional 21 overnights with [the Child] during the school year on alternating Wednesday overnights in Week 1, the actual annual schedule of physical custody of [the Child] has the potential to operate as [*de facto*] primary physical custody for Father and partial physical custody for Mother should Father exercise his option to retain custody on those additional 21 overnights of physical custody on alternating Wednesdays during the school year in Week 1?

5.    Did the trial court commit an error of law and abuse of discretion by failing to award Mother an equal amount of overnights annually necessary to effectuate a true shared equal physical custody schedule for [the Child] by not granting Mother's request to have shared equal physical custody during the school year where Mother would have physical custody each Monday and Tuesday night, Father would have physical custody each Wednesday and Thursday overnight[,] and the parties would alternate weekends from Friday after school until Monday prior to the start of school, and during the summer months, the parties would have [a] week on/week off custody schedule?

6. Did the trial court commit an error of law and abuse of discretion by failing to award Mother an additional [16] overnights of physical custody with [the Child] during the school year on alternating Wednesday overnights in Week 1, which were awarded as an option for Father to exercise, but had those dates been granted to Mother, would have effectuated a true shared equal physical custody schedule for [the Child]?

Mother's Brief at 4-7 (extraneous capitalization omitted).[2, 3]

Mother's issues collectively challenge the trial court's final custody order as it pertains to the physical custody schedule on the ground that the trial court, by affording Father the option to exercise additional physical custody time on alternating Wednesdays, awarded Father the potential for more physical custody time with the Child than could potentially be exercised by Mother. *Id.* at 19-38.

_____

[2] Mother also raised the following issue:

Did the trial court commit an error of law and abuse of discretion [in] Section II[-]Physical Custody [of] the [January 2, 2026 final custody order,] by granting Father the option to exercise an additional 21 overnights of physical custody during the school year on Wednesdays which effectively awarded Father the option to exercise primary physical custody, as granting Father that option could have unintended consequences with respect to the issue of child support which was in direct contravention of the request of the parties who both informed the [trial] court at the time of the custody hearing on December 15, 2025[,] that they each were requesting a shared equal physical custody schedule for [the Child]?

Mother's Brief at 7-8 (extraneous capitalization omitted). Mother, however, withdrew this issue for purpose of appeal. *Id.* at 8.

[3] Father did not file a brief.

Preliminarily, we note that the trial court, in considering the best interest of the Child, analyzed the factors under Section 5328(a) of the Child Custody Act that was in effect from January 24, 2011, to December 31, 2013. **See** Trial Court Opinion, 1/2/26, at 6-12; **see also** 23 Pa.C.S.A. § 5328(a) (effective Jan. 24, 2011, to Dec. 31, 2013). Because the custody hearing in this matter took place on December 15, 2025, the trial court was required to consider the factors under the version of Section 5328(a) that became effective August 29, 2025. **C.R.F. v S.E.F.**, 45 A.3d 441, 445 (Pa. Super. 2012) (explaining that, the date the evidentiary proceeding commences, and not the date the custody petition was filed, determines the appliable version of the Child Custody Act); **see also** 23 Pa.C.S.A. § 5328(a) (effective Aug. 29, 2025). A trial court is mandated to consider all relevant factors under 5328(a) in fashioning its custody order. While we do not condone the trial court's failure to apply the correct version of Section 5328(a) in the case *sub judice*, Mother, nevertheless, failed to raise this issue on appeal, and we cannot address it *sua sponte* because it does not implicate our jurisdiction.[4]

---

[4] We are cognizant that this Court recently remanded a custody case to the trial court for further proceedings because the trial court failed to consider the correct version of Section 5328 of the Child Custody Act. **Curtis v. Curtis**, ___ A.3d ___, ___ WL ___, 1500 WDA 2025 (Pa. Super. filed Jul. 7, 2026) (slip opinion). In **Curtis**, however, Father specifically challenged the trial court's analysis under several of the factors enumerated in Section 5328(a). In the case *sub judice*, Mother only challenges the trial court's definition of, and application of, "shared physical custody" and whether, or not, this form of custody requires the physical custody time be divided equally between the parties.

*See Steiner v. Markel*, 968 A.2d 1253, 1257 (Pa. 2009) (stating, "[w]here the parties fail to preserve an issue for appeal, [this Court] may not address the issue *sua sponte*"); *see also Interest of T.W.*, 261 A.3d 409, 424 n.9 (Pa. 2021) (explaining that, "[a]ppellate courts must be mindful not to address issues which are not preserved for review as it disturbs the process of orderly judicial decision-making by depriving the court of the benefit of counsel's advocacy and depriving the litigants the opportunity to brief and argue the issues" (citation, original quotation marks, and ellipsis omitted)); *In re Adoption of K.M.G.*, 219 A.3d 662, 668 (Pa. Super. 2019) (stating that, "an appellate court may not raise an issue *sua sponte*, except when the issue addresses the subject-matter jurisdiction of the court"), *aff'd*, 240 A.3d 1218 (Pa. 2020).

Our standard of review of a child custody order is well-established.

The appellate court's scope of review in custody cases is of the broadest type. This broad power is limited to the extent that an appellate court may not nullify the fact[-]finding function of the [trial court]. We are empowered to form our own independent deductions and inferences from the facts found by the [trial court], but may only interfere with the decisions of the [trial] court where there has been a gross abuse of discretion. We must determine whether the trial court's factual findings support the trial court's factual conclusions, but we may not disturb these conclusions unless they are unreasonable in light of the [trial] court's factual findings.

Our appellate function is to make an independent judgment, based on the testimony and evidence before us, that is in the best interest of the child. We must make an independent examination of the record and make an order on the merits of the case which is right, just[,] and will serve the best interest of the child. After we take full account of the [trial court's] reasoning, still, we must

be easy in our own conscience that the [trial court's] award will serve the best interest of the child, or children, in question.

Although we are given a broad power of review, we are constrained by an abuse of discretion standard when evaluating the [trial] court's order. An abuse of discretion is not merely an error of judgment, but if the [trial] court's judgment is manifestly unreasonable as shown by the evidence of record, discretion is abused. An abuse of discretion is also made out where it appears from a review of the record that there is no evidence to support the [trial] court's findings or that there is a capricious disbelief of evidence.

**M.A.T. v. G.S.T.**, 989 A.2d 11, 18-19 (Pa. Super. 2010) (*en banc*) (citation omitted).

Mother asserts "that the trial court entered a final [custody order] which was manifestly unreasonable as shown by the evidence of record." Mother's Brief at 23. "Mother argues that since both parents testified that they each specifically sought a shared equal physical custody schedule, that the trial court's decision to grant Father the option to have [physical] custody [of the Child] on an additional [21] alternating Wednesday overnights during the school year was an error of law and was manifestly unreasonable[.]" **Id.** at 25. According to Mother, the "trial court failed to articulate a specific reason within the custody best interest factors why it would be in [the Child's] best interest for Father to be given the option to exercise [additional custody time] on alternate Wednesday overnights during the school year." **Id.** at 29-30 (extraneous capitalization omitted). The "trial court's failure to specifically give a reason . . . was manifestly unreasonable as shown by . . . the testimony of Father himself where he did not believe that he should have custody of [the

Child] on Wednesdays." *Id.* at 30.  Mother contends that the trial court's final custody order does not provide for "shared equal physical custody" of the Child but, rather, provides Father the option of exercising a greater percentage of physical custody time with the Child than Mother.  *Id.* at 34.

In fashioning its physical custody schedule, the trial court stated,

When considering equal custody there are various ways to view that concept.  One can look at whether both parents have custodial control over the same [] number of days/overnights or whether both parents have custodial control over the same amount of time when the child is physically present.  This becomes especially relevant when considering school and work schedules.  Here the [trial c]ourt will try to consider a hybrid approach in arriving at a schedule.

Trial Court Opinion, 1/2/26, at 11.  The trial court further explained that "Wednesdays seem to represent the most potential for chaos because of Father's need to secure his [step-daughter] after school and travel [] to take custody of his two older children."  *Id.*  The trial court then fashioned the final custody order whereby Father was granted the option to exercise additional physical custody of the Child on alternating Wednesday nights.  Trial Court Final Custody Order, 1/2/26, at § II(A).

We begin our review by examining the parameters of the trial court's award of shared physical custody of the Child during the school year.[5]  Over

_____

[5] Mother does not challenge the trial court's final custody order as it pertains to the physical custody of the Child during the summertime and certain holidays.  Therefore, we limit our discussion to a review of the physical custody arrangements that pertain to the school year.

- 15 -

the course of a two-week period, the trial court devised the following physical custody schedule: Mother will have physical custody of the Child from 9:00 a.m. on Saturday to the start of school (8:40 a.m.) on Thursday; Father will have physical custody of the Child from the start of school (8:40 a.m.) on Thursday to the start of school (8:40 a.m.) on Monday; Mother has physical custody of the Child from the start of school (8:40 a.m.) on Monday to the start of school (8:40 a.m.) on Wednesday; and Father has physical custody of the Child from the start of school (8:40 a.m.) on Wednesday to 9:00 a.m. on Saturday. The result was a 5-4-2-3 schedule with each parent having physical custody of the Child for seven days during a two-week period. The Child attends school typically from 8:40 a.m. to 3:10 p.m., Monday through Friday. When considering the time the Child spends in school, and away from his parents, each parent has 135.5 hours of physical custody time with the Child during a two-week period. The trial court, however, provided two caveats to the typical two-week physical custody schedule utilized when school is in session. On alternating Wednesdays, Father was provided the option to take physical custody of the Child on Wednesday at 7:00 p.m. instead of 8:40 a.m. on Thursday. If Father exercised this option, it would result in Father having an additional 13 hours and 40 minutes of physical custody time with the Child during a two-week period. The trial court also provided that, if school were closed on a Monday and Mother was not working on Monday, then Mother had the option to take physical custody of the Child on Sunday evening at 7:00 p.m. instead of 8:40 a.m. on Monday morning. This would result in

- 16 -

Mother having an additional 13 hours and 40 minutes of physical custody with the Child. If school were closed on Monday but Mother worked on Monday, then Father would retain physical custody of the Child until 4:30 p.m. on Monday instead of relinquishing physical custody at 8:40 a.m. on Monday, thus resulting in Father having an additional seven hours and 50 minutes of physical custody of the Child.[6]

In awarding physical custody of a child, a trial court, after considering all relevant factors enumerated in Section 5328(a) of the Child Custody Act, may award the following types of physical custody to an individual or individuals, if such custody arrangement in in the best interest of the child: shared physical custody; primary physical custody; partial physical custody; sole physical custody; and supervised physical custody. 23 Pa.C.S.A. § 5323(a)(1-5). "Shared physical custody" is defined as "[t]he right of more than one individual to assume physical custody of the child, each having **significant** periods of physical custodial time with the child." 23 Pa.C.S.A. § 5322 (emphasis added). Conspicuously absent from the definition of "shared physical custody" is the requirement that the division of shared physical custodial time with the child be equal. *V.B. v. M.L.T.B.*, 467 A.2d 880, 882 (Pa. Super. 1983) (stating, "shared [physical] custody does not necessarily mean equal time"); *see also T.C.T. v. J.E.T.*, 2020 WL 865375,

_____

[6] Neither party challenges the potential additional time awarded on Mondays when school is not in session.

at *7 (Pa. Super. filed Feb. 21, 2020) (unpublished memorandum). Rather, parents who share physical custody of a child are each to have significant period of time with the child.

As with all decisions in custody matters, the paramount concern remains the best interest of the child. 23 Pa.C.S.A. § 5328(a); **see also** 23 Pa.C.S.A. § 5338(a). In fashioning a physical custody arrangement, the trial court must "delineate the reasons for its decision on the record in open court or in a written opinion or order." 23 Pa.C.S.A. § 5323(d).

At the custody hearing, Father described his typical Wednesday as follows:

> You know, it's a day I have all the kids. I pick up [my step-daughter from her school.] My mom has to go pick up [the Child] from [his] school. Unfortunately [due to timing and distance,] I cannot pick up both of [the children] from [their respective schools], so any day that I have [the Child], my mom has to pick him up, or it's – or my wife, and then I have to get both [the Child and my step-daughter] together, and then I have to drive [] to pick up [my two older children], and then depending on how the schedule falls, typically, my wife then gets off work, drives an hour [to meet me] to then pick up the [two older children] and take them to youth [group].
>
> If she's not out of work in time, then I have to then drive [to the location of the youth group], drop off [the two older children] and then take the hour drive home with [the Child and my step-daughter] in tow, and hope that they don't fall asleep in the car and they can get fed and everything and bathed when we get home[.]

N.T., 12/15/25, at 128, 186-189. Father agreed that it was in the Child's best interest for Mother to retain physical custody of the Child on Wednesday because

> [Wednesday] is an incredibly busy day. Having [the Child] that day would result in him easily spending two to three hours in the car rather than having the opportunity [with Mother] to play and run and get his energy out and do schoolwork or, you know, whatever else.

*Id.* at 129.

After hearing Father's description of his typical Wednesday, the trial court stated, "[w]ith all due respect, that sounds crazy." *Id.* at 189. The trial court further noted, "you folks have agreed to a 50-50 [physical custody] arrangement, and I will respect that[.] Your life circumstances [are] going to make it somewhat difficult to be perfect [in fashioning a physical custody arrangement]. I'm obligated to address what's in the best interest of [the Child]." *Id.* at 193.

As set forth *supra*, the trial court, in fashioning a typical two-week physical custody arrangement during the school year, provided a 5-4-2-3 schedule whereby each parent had an equal amount of physical custodial time with the Child. Although both Father and the trial court acknowledge that Father's schedule on Wednesday evenings is chaotic or "crazy," the trial court granted Father physical custody of the Child on Wednesday evenings of week 2 of the two-week physical custody schedule without objection from either party. The trial court then provided Father with an option of exercising additional physical custodial time on Wednesday evenings of week 1 of the two-week physical custody schedule. Mother's objection is that Father **may** exercise his option for physical custody of the Child on Wednesday evenings of week 1 of the two-week physical custody schedule and this **may** result in

Father having a mere 13 hours and 40 minutes of additional time with the Child per a two-week period. We remind the parties that "equal" in terms of a grant of shared physical custody of a child does not mean each party will receive precisely equal amounts of custodial time. Shared physical custody only requires that each parent receive **significant** amounts of physical custodial time with the child, with the division of physical custodial time being in the best interest of the child. In the case *sub judice*, the trial court's two-week physical custody schedule requires the Child to participate in Father's "chaos" on Wednesday evenings during week 2 since Father takes physical custody of the Child on Wednesday mornings of week 2. We cannot find that providing Father the option to potentially exercise physical custody of the Child on Wednesday evenings during week 1 is an abuse of discretion. Father, who acknowledges that his schedule on Wednesdays is chaotic and not in the best interest of the Child, may elect to forgo exercising his option for additional physical custodial time with the Child, the same as Mother may elect not to exercise her option to have additional custodial time with the Child on Mondays when school is not in session and Mother is not at work. The trial court did not abuse its discretion in providing each parent the option to have additional physical custodial time with the Child during the course of a two-week period while school is in session. Moreover, the final custody order provides that "[t]he parents are free to modify the terms of the [final custody order] if both are in agreement." Trial Court Final Custody Order, 1/2/26, at

- 20 -

§ XIII(1). As always, we encourage all parents to act in such a way that is ever-mindful of what is in the best interest of their children.

Order affirmed.

Judgment Entered.

_Benjamin D. Kohler_

Benjamin D. Kohler, Esq.
Prothonotary

Date: 7/29/2026